[No. A059737. First Dist., Div. Two. Apr. 5, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ELIAZAR SANCHEZ, Defendant and Appellant.

## COUNSEL

R. Stevens Condie, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Violet M. Lee and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENSON, J.\***—Eliazar Sanchez appeals after a jury convicted him of two counts of robbery. He asserts the case must be remanded for resentencing because the trial court failed to state reasons for imposing consecutive, rather than concurrent, sentences. We affirm.

### FACTS AND PROCEDURAL HISTORY

Jatindergit Singh testified that on February 15, 1992, he was working at a Quik Stop Store on Leland Road in Pittsburg. He stated that two men—one African-American, one Latino—came into the store and took beer from the cooler. When Singh asked for money, the African-American man displayed a gun and asked, "[y]ou want money or you want . . . ." The men then left the store without paying. Singh identified appellant as one of the men. The incident was videotaped.

Airon Gauff testified that he too was robbed by an African-American man and a Latino man while working in a store on February 15, 1992. He testified that he was suspicious the men were attempting to steal beer and was watching them. Appellant came up behind Gauff, pulled out a gun and said, "Give me the money." As the men left, appellant warned, "[i]f you call anybody or if you come after me, I'm going to get you." This incident also was videotaped; Gauff viewed the videotape at trial and identified appellant as the Latino man who robbed the store that night.

The jury convicted appellant of two counts of robbery. (Pen. Code, §§ 211-212.5.)[1] The jury also found true the allegations that appellant personally used a firearm in connection with count 2 (§ 12022.5, subd. (a)) and was armed in connection with count 1 (§ 12022, subd. (a)(1)).

At sentencing, the court noted at the outset that it had read and considered the probation report, and that apart from two letters on an unrelated topic, it had not received any other matter relating to the sentencing. The probation report reflected that defendant had a criminal record dating to 1984, when a juvenile court petition alleging he had committed a burglary was sustained. In 1985, he was committed to a boys' ranch after a misdemeanor stolen property charge was sustained. Also, in 1985, he escaped from the facility. In April 1988, he was charged as an adult with burglary, pleaded guilty to a misdemeanor burglary charge, was placed on three years' probation, and was

---

\*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.

[1]All subsequent statutory references are to the Penal Code unless otherwise indicated.

ordered to serve 120 days in county jail. In August 1988, in connection with an incident in which he repeatedly rammed another car at high speed until that car went into a ditch, he was charged with assault with a deadly weapon and drunk driving. He pleaded guilty to drunk driving. In February 1990, he pleaded guilty to resisting a police officer, and was sentenced to 220 days in jail. In March 1991, he was charged with battery, spousal battery, brandishing a firearm, possessing a concealed weapon, and being a felon in possession of a firearm. He pleaded guilty to misdemeanor battery, and was sentenced to 75 days in jail. In March 1992, under unspecified circumstances, he was convicted of felony drunk driving, placed on four years probation, and ordered to serve four months in county jail. Defendant was on probation for this offense when he committed the robberies that led to the charges in this case. The probation officer noted that defendant, then 25 years old, had "a well-established record of violent acting out behavior and continuous substance abuse," and noted that "[u]nless he is restrained he will continue to be a danger to himself and to others." The probation officer noted defendant's poor performance on probation, and that defendant had been in frequent violation of court orders as a juvenile. The probation officer recommended a state prison sentence, but did not recommend any particular term.

At the sentencing hearing, after reaching agreement with the parties that defendant's use of a gun precluded probation, the court heard argument. The prosecutor asked the court to select aggravated terms on all counts, and to order those terms served consecutively, for the maximum possible sentence of 11 years. As had the probation officer, the prosecutor noted defendant's long criminal history and the increasing seriousness of the offenses he committed. In response, defendant argued for a lesser term based on defendant's dependence on alcohol and on the fact that defendant's accomplice had received a sentence of four years after pleading guilty.

At the conclusion of argument, the court noted that defendant's offenses were serious, especially because he had used a gun, and stated that in view of those factors, defendant was not "entitled to any special leniency." The court then referred to defendant's criminal record, and though noting his record was not as serious as some, the court stated that "this man really does seem out of control." The court then said that its "sense under the circumstances is that this is not a man who deserves an aggravated term because this isn't an aggravated offense, but there isn't a whole lot of evidence by which a Court could find mitigation either." The court then sentenced defendant to the midterm on count 2 robbery, remarking that it was a "garden-variety" robbery. With respect to the enhancement based on defendant's use of a firearm in the offense, the court imposed the midterm

sentence, noting that the offense appeared to be a "garden-variety-type, no mitigation, no aggravation-type use of the weapon."[2] On the second robbery charge, the court imposed the midterm, and ordered that term served consecutively, but without specifying its reason for doing so. Finally, with the remark that it was at least "one area of grace of discretion that I should give you in this particular case," the court struck an additional enhancing allegation under section 12022.

## DISCUSSION

Section 1170, subdivision (c), provides that the court "shall state the reasons for its sentence choice on the record at the time of sentencing." The decision to impose consecutive rather than concurrent sentences is a "sentence choice" within the meaning of this section. (*People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 704 [173 Cal.Rptr. 71]; *People* v. *Reiley* (1987) 192 Cal.App.3d 1487, 1489 [238 Cal.Rptr. 297].) An express statement of reasons is required to support such a choice. (*People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 486 [169 Cal.Rptr. 199].) However, where the sentencing court fails to state such reasons, remand for resentencing is not automatic; we are to reverse the sentence only if "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see, e.g., *People* v. *Avalos* (1984) 37 Cal.3d 216, 233 [207 Cal.Rptr. 549, 689 P.2d 121]; *People* v. *Gutierrez* (1991) 227 Cal.App.3d 1634, 1639 [278 Cal.Rptr. 748].)

Appellant complains that, although the court generally discussed some of the factors relevant to its sentence choice, it failed to indicate which of these reasons was used to support its decision to impose a consecutive term for the robbery charged in count 1. Respondent concedes that the court "did not specifically designate any particular factor to support the imposition of a consecutive term," but contends the court's discussion of its reasoning was sufficient to support the one sentence choice (the consecutive sentence on count 1) that required a statement of reasons. Though we agree the court erred by failing to state a separate reason for consecutive sentencing, in view of defendant's extensive criminal history as set out in the probation report, we find it is not reasonably probable that the result would have been different had the court been reminded to state its reasons, and accordingly, we conclude there is no basis for reversal. However, before directly addressing that question, we treat defendant's claim that the *Watson* test for reversible error should not apply to a trial court's failure to state sufficient reasons for its sentencing choices.

---

[2]A consecutive sentence on this firearm enhancement was required by statute. (Pen. Code, § 12022.5, subd. (a).)

■ Defendant suggests we should follow *People* v. *May* (1990) 221 Cal.App.3d 836, 839 [270 Cal.Rptr. 690], in which the court held that the "appropriate harmless error test" for failure to state adequate reasons for consecutive terms was whether "[there is] a reasonable possibility that a statement of reasons would have altered the trial judge's conclusion or revealed reversible error." We decline the suggestion because in our view, *May*'s adoption of that standard was based on an unthinking and mistaken reading of the law.

The vast majority of cases that apply an explicit harmless error standard for procedural error in the selection and statement of reasons for sentencing choices hold that an appellate court should not remand for resentencing unless " ' " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.' " ' " (See, e.g., *People* v. *Gutierrez, supra,* 227 Cal.App.3d at p. 1638; *People* v. *Price* (1991) 1 Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Avalos, supra,* 37 Cal.3d at p. 233; *People* v. *Edwards* (1993) 13 Cal.App.4th 75, 79 [16 Cal.Rptr.2d 572]; *People* v. *McLeod* (1989) 210 Cal.App.3d 585, 590 [258 Cal.Rptr. 496]; *People* v. *Scott* (1988) 200 Cal.App.3d 1090, 1096 [246 Cal.Rptr. 406]; *People* v. *Jackson* (1987) 196 Cal.App.3d 380, 392 [242 Cal.Rptr. 1]; *People* v. *Porter* (1987) 194 Cal.App.3d 34, 39 [239 Cal.Rptr. 269].) However, in a few cases, courts have stated the test for such error in the terms defendant suggests, that the appellate court should find the error harmless only if it appears there is no " 'reasonable possibility' " the result would have been more favorable to the defendant if the error had not occurred. (*People* v. *Gutierrez, supra,* 227 Cal.App.3d at pp. 1643-1644 (conc. opn. of Kline, P. J.); *People* v. *May, supra,* 221 Cal.App.3d at p. 839; *People* v. *Thompson* (1989) 209 Cal. App.3d 1075, 1086 [257 Cal.Rptr. 658]; *People* v. *Preyer* (1985) 164 Cal.App.3d 568, 577 [210 Cal.Rptr. 807].) Defendant relies on the latter group to support his claim we should apply a reasonable possibility standard here. However, we believe the courts that have expressed the standard in those terms have mistakenly adopted a test for prejudice which was devised for capital cases, and which is equivalent to the "harmless beyond a reasonable doubt" standard applicable to deprivations of federal constitutional rights. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Because we find that standard inappropriate to cases involving ordinary sentencing error, we reject defendant's claim.

■ It is established beyond question that with few exceptions, an ordinary criminal judgment may not be reversed for nonconstitutional error unless it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (Cal. Const., art. VI, § 13; see, e.g.,

*People* v. *Cahill* (1993) 5 Cal.4th 478, 487-493 [20 Cal.Rptr.2d 582, 853 P.2d 1037].) ▮▮▮ As we have pointed out, that standard has almost universally been applied to a trial court's failure to either select or articulate proper reasons for a noncapital sentence. Application of that standard to such error is appropriate; as one court put it in an oft-quoted phrase, courts are "unwilling to engage in idle gestures or reach ridiculous results by slavish adherence to ritualistic form." (*People* v. *Blessing* (1979) 94 Cal.App.3d 835, 839 [155 Cal.Rptr. 780].) Where, as in this case, it is improbable that a lower court's sentencing choice would have been different if it had been reminded to state a proper reason, the constitutional provision forbidding reversal for insubstantial errors should apply, a conclusion which is reinforced by our Supreme Court's endorsement of that principle in *People* v. *Price, supra,* 1 Cal.4th at page 492 and *People* v. *Avalos, supra,* 37 Cal.3d at page 233.

In contrast, on review of error occurring in the penalty phase of a capital case, a jury's judgment of death will be reversed if it is "reasonably possible" that the jury might have reached a different result had a given error not occurred. (*People* v. *Brown* (1988) 46 Cal.3d 432, 446-448 [250 Cal.Rptr. 604, 758 P.2d 1135] [rejecting specific challenge to reasonable possibility standard]; see *People* v. *Ashmus* (1991) 54 Cal.3d 932, 983 [2 Cal.Rptr.2d 112, 820 P.2d 214]; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 136-137 [32 Cal.Rptr. 4, 383 P.2d 412]; and see *People* v. *Crew* (1991) 1 Cal.App.4th 1591, 1606 [2 Cal.Rptr.2d 755].) The reasons for applying that stricter standard were explained at length in *Brown, supra,* in response to a specific claim that absent federal constitutional error, the proper standard for determining prejudice should be that announced in *People* v. *Watson, supra,* 46 Cal.2d at page 836. (*Brown, supra,* 46 Cal.3d at pp. 446-447.) The *Brown* court pointed out that a capital jury does more than find facts in the penalty phase; it "render[s] an individualized, *normative* determination about the penalty appropriate for the particular defendant—i.e., whether he should live or die." (*Id.* at p. 448.) The court reasoned that "[w]hen the 'result' under review is such a normative conclusion based on guided, individualized dis- cretion, the *Watson* standard of review is simply insufficient to ensure 'reliability in the determination that death is the appropriate punishment in a specific case.' [Citations.]" (*Ibid.*) In later cases, the "reasonable possibility" inquiry has been equated with the "harmless beyond a reasonable doubt" test applicable to cases involving deprivation of federal constitutional rights. (*Chapman* v. *California, supra,* 386 U.S. 18; see *People* v. *Heishman* (1988) 45 Cal.3d 147, 201 [246 Cal.Rptr. 673, 753 P.2d 629]; *People* v. *Crew, supra,* 1 Cal.App.4th at pp. 1605-1606; and see *Chapman, supra,* 386 U.S. at pp. 22-24 [17 L.Ed.2d at pp. 709-711] [stating that there is little if any difference between the inquiry whether there is a reasonable possibility an error contributed to a verdict and requiring the beneficiary of the error to

prove it harmless beyond a reasonable doubt].) Such a standard is appropriate where sentence choice under review is between life or death. (*Caldwell* v. *Missisippi* (1985) 472 U.S. 320, 329 [86 L.Ed.2d 231, 239, 105 S.Ct. 2633] [" 'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination' "].) However, there is no basis in either the reasoning or the holdings of these cases for application of that standard in review of noncapital sentencing error.

In our view, the few cases which have applied the "reasonable possibility" standard to such error are mistaken, probably because those courts failed to recognize any distinction between the two tests. *People* v. *May, supra,* illustrates the point. As here, the defendant in *May* contended the trial court had erred by failing to state proper reasons for consecutive sentencing. (*People* v. *May, supra,* 221 Cal.App.3d at p. 838.) Without discussion, reasoning, or explanation, the court cited *People* v. *Heishman, supra,* 45 Cal.3d 147, 201, for the proposition that the defendant was entitled to reversal if there was a "reasonable possibility" the result would have been different had proper reasons been stated. (*May, supra,* at pp. 839-840.) However, *Heishman* is one of the many examples of the application of the reasonable possibility test to error occurring in the penalty phase of a capital trial.[4] For the reasons we have stated, we find such cases do not support the proposition for which *Heishman* was cited in *May,* and a fortiori, that *May*'s reliance on *Heishman* was misplaced.

For similar reasons, we also disapprove the few other cases we have found in which ostensibly apply the reasonable possibility standard to error arising out of a failure to select or state reasons for sentence choices. In *People* v. *Preyer, supra,* 164 Cal.App.3d at page 577, the court announced that a failure to state proper reasons for a sentencing choice was harmless because "there [was] no reasonable possibility" the sentence would be different on remand, but immediately cited *People* v. *Watson, supra,* 46 Cal.2d at page 836 as authority for the proposition. *Watson* does not adopt the reasonable possibility test; accordingly, we believe the *Preyer* court did not intend the dis tinction it appears to make. *People* v. *Thompson, supra,* 209 Cal.App.3d at page 1086, quotes the passage from *Preyer* without additional reasoning, and therefore suffers from the same defect. Finally, because we do not agree that in every case, ". . . there will always appear to be at least an even

---

[4] Apart from the citation to *Heishman, May* betrays no consciousness of the distinction between the ordinary *Watson* standard and the more restrictive reasonable possibility test. In fact, in its general discussion of harmless error in sentencing, *May* cites numerous cases applying the *Watson* standard to noncapital sentencing error, and then notes that the same standard was adopted by our Supreme Court in *Heishman,* a statement which is simply incorrect. (*People* v. *May, supra,* 221 Cal.App.3d at pp. 839-840.)

chance that the court would have imposed the same sentence even without the error," we also decline to follow the reasoning of the concurring opinion in *People v. Guitierrez, supra.* (227 Cal.App.3d at p. 1643 [arguing that application of the *Watson* standard "eviscerate[s] a legislative safeguard central to the DSL"].) Unlike the choice between life and death, there is no quality of ordinary sentencing choices which would require us to ignore the constitutional command that we are to reverse a judgment only where there has been a miscarriage of justice, or in other words, where it is "reasonably probable" the error affected the outcome. (*Watson, supra,* at p. 836.)

In sum, we conclude that those cases which have stated that a sentencing error in a noncapital case should be reversed if there is a reasonable possibility the result would be more favorable to the defendant on remand are mistaken. The correct test for harmless error in such cases is that announced in *People v. Watson, supra,* 46 Cal.2d at page 836.[5] With that conclusion in mind, we return to the facts of this case.

■■■ As we have discussed, the court failed to give any specific reason for its decision to impose consecutive sentences. However, in view of the contents of the probation report, we find it improbable the result would have been different had the court been reminded to state its reasons for consecutive sentencing. Taken in context, the court's statements that defendant did not deserve the aggravated term and that the robberies were "garden variety" appear to be explanations why it chose not to follow the prosecutor's recommendation for the aggravated terms, not evidence it would not have imposed a consecutive sentence had it been reminded to state its reasons. Given defendant's long criminal history, his execrable performance on probation, the escalating seriousness of his offenses, and the probation officer's and the court's observations that the defendant was out of control and a danger to the community, we conclude the court would not have sentenced defendant differently if reasons had been stated. (Cal. Rules of Court, rule 425(b) [court may refer to "[a]ny circumstances in aggravation or mitigation" in deciding whether to impose consecutive sentences]; see *People v. Bravot* (1986) 183 Cal.App.3d 93, 98 [227 Cal.Rptr. 810] [different result not reasonably probable where choice of consecutive sentence was supported by the record and consistent with court's view that defendant was a " 'sociopath' " and a " 'menace to society' "].)

---

[5] A fortiori, we also reject defendant's claim that due process requires a rule of per se reversal. In view of the universal acceptance of the principle that some form of harmless error analysis should apply to errors occurring in the selection and statement of reasons for ordinary sentencing choices, we find defendant's argument borders on the frivolous.

DISPOSITION

The judgment is affirmed.

Smith, J., concurred.

**KLINE, P. J.,** Dissenting.—"In law, as in life, lines have to be drawn. But the fact that a line has to be drawn somewhere does not justify its being drawn anywhere. The line must follow some direction of policy, whether rooted in logic or experience." (*Pearce* v. *Commissioner of Internal Revenue Service* (1942) 315 U.S. 543, 558 [86 L.Ed. 1016, 1025, 62 S.Ct. 754] (dis. opn. of Frankfurter, J.).) The constrictive standard followed by the majority in this case draws an arbitrary line that serves no sound policy and defies both logic and experience.

The majority says, in effect, that the benefit of requiring a trial court to confirm whether it genuinely intended to impose a year or more of state prison time is not worth the 15 minutes it would take to do so—even where, as here, the trial court not only failed to state reasons for the sentence imposed, as required by statute (Pen. Code, § 1170, subd. (c)), but also revealed both a desire to accord leniency and a misunderstanding of its sentencing authority.[1] It is only when an appellate court is subjectively satisfied reconsideration would "probably" result in a lesser sentence that remand for resentencing is required. This grudging conception of the role of appellate courts in the criminal sentencing process cannot be squared either with the determinate sentence law or the due process clauses of the California Constitution.

I.

In my concurring opinion in *People* v. *Gutierrez* (1991) 227 Cal.App.3d 1634, 1641 et seq. [278 Cal.Rptr. 748], I explained at length why a trial court's failure to state reasons for a sentence choice requires a remand for resentencing "if there is a 'reasonable possibility that a statement of reasons would have altered the trial judge's conclusion or revealed reversible error.' "[2] (*Id.*, at p. 1645, quoting *People* v. *May* (1990) 221 Cal.App.3d 836, 839 [270 Cal.Rptr. 690], review den.) I need not reiterate that explanation.

My colleagues dispute my analysis on the ground that the cases I rely upon "have mistakenly adopted a test for prejudice which was devised for

---

[1]The court's erroneous understanding is described, *post*, at p. 1691, fn. 3.

[2]I also explained why, if not bound by existing case law, I would make error of this type reversible per se. (*People* v. *Gutierrez, supra*, 227 Cal.App.3d at pp. 1646-1649.)

capital cases, and which is equivalent to the 'harmless beyond a reasonable doubt' standard applicable to deprivations of federal constitutional rights." (Maj. opn., *ante* at p. 1685, citing *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The majority's distinction is both irrelevant and inaccurate. First, contrary to the majority's assertion, the "no reasonable possibility" standard depends neither on the holdings in capital cases nor on the federal *Chapman* standard, but on a commonsense recognition that it is subversive of justice and substantive policy to sanction a class of error which, by its nature, insulates itself from appellate review.

The majority commits a further mistake when it implies that the rule applied in capital cases is inappropriate for noncapital sentencing because of the obvious difference in the severity of the penalty and the nature of the rights affected by the outcome. The severity of the penalty is analytically unimportant because it cuts both ways. In civil cases involving no deprivation of liberty whatsoever, let alone the death penalty, the failure to provide a statement of decision where such an explanation is required is reversible per se. (*Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129-1130 [210 Cal.Rptr. 114].) This strict rule is justified not only by the importance of the requirement that reasons be stated, both to the parties and reviewing courts, but because appellate insistence upon adherence to the legislative mandate that reasons be stated "impose[s] no substantial burden upon trial courts." (*Id.*, at p. 1129.) No reason appears why appellate courts should be more indulgent of the failure to state reasons for lengthening a prison term than they are for the failure to explain a ruling in a slip-and-fall case.

The majority wanders still further afield in its reliance upon cases involving review of a *jury's* decision to impose the death penalty. (Maj. opn. *ante*, at p. 1686.) A better analogy is presented by cases in which a capital defendant challenges the trial *court's* failure to state reasons for denying an automatic motion to modify the jury's penalty verdict. As noted in *Gutierrez*, however, those cases are inconclusive in the present context both because they reach inconsistent results and because the sentencing procedure in death cases is markedly different from that in noncapital cases. (227 Cal.App.3d at p. 1647, citing *People* v. *Sheldon* (1989) 48 Cal.3d 935, 962-963 [258 Cal.Rptr. 242, 771 P.2d 1330]; *People* v. *Brown* (1988) 45 Cal.3d 1247, 1263-1264 [248 Cal.Rptr. 817, 756 P.2d 204], revd. on other grounds in *California* v. *Brown* (1987) 479 U.S. 538 [93 L.Ed.2d 934, 107 S.Ct. 837]; *People* v. *Heishman* (1988) 45 Cal.3d 147, 200-201 [246 Cal.Rptr. 673, 753 P.2d 629]; *People* v. *Rodriguez* (1986) 42 Cal.3d 730, 792-795 [230 Cal.Rptr. 667, 726 P.2d 113].)

As I pointed out in *Gutierrez*, the imposition of limits and controls on trial court discretion is one of the chief purposes of the determinate sentencing law. The requirement that the trial court state reasons for its "sentence choice" is one of several statutory mechanisms for controlling judicial discretion in sentencing. (*People* v. *Gutierrez, supra*, 227 Cal.App.3d at p. 1641.) "The Legislature undoubtedly believed that such a statement would (1) help to ensure meaningful review; (2) act as a guard against careless decisions; (3) encourage the trial judge to make sentencing choices systematically, in full recognition of the applicable considerations; and (4) 'preserv[e] public confidence in the decision-making process by helping to persuade the parties and the public that the decision-making is careful, reasoned and equitable.' [Citations.]" (*Id.*, at pp. 1641-1642.) The majority relieves trial judges of the need to comply with the statutory mandate on the basis of a highly speculative and subjective assessment as to whether compliance would likely result in a more lenient sentence, an issue unrelated to the reasons the Legislature required a statement of reasons. Compelling a trial judge to discharge the statutory responsibility to state reasons for a sentence choice may be thought unjustified where it would not likely make a difference in the sentence; but doubts about the effect of trial court compliance with the law cannot be resolved against the defendant without frustrating or compromising important legislative goals.

I believe it is neither fair nor wise to speculate whether the trial judge in this case would impose a lesser sentence if the matter were remanded, and I have no opinion whether he ought to do so. It is enough for me that a lesser sentence is possible, in that (1) the offenses described in counts 1 and 2 were committed on the same day, suggesting a "single period of aberrant behavior" (Cal. Rules of Court, rule 425(a)(3); see *People* v. *Robinson* (1992) 11 Cal.App.4th 609, 614 [14 Cal.Rptr.2d 88], review den. [remand required where facts suggested single period; error not "clearly harmless"]); (2) the court stated that "this isn't an aggravated offense"; (3) the court described at least one of the offenses as a "garden variety" robbery; and (4) the court indicated an intent to be lenient; though, as the court was seemingly unaware, the enhancement the court purported to strike was statutorily proscribed.[3]

---

[3]The trial judge stated that he was striking the "arming clause" of the subordinate offense charged in count 1 under Penal Code section 12022, subdivision (a)(1), as a matter of "grace [or] discretion," apparently because the codefendant merely displayed the weapon and the absence of any indication appellant "knew or had some previous knowledge that he was going to use the weapon as he did." As the Attorney General concedes, the trial court lacked discretion to impose this enhancement, because the subordinate offense of robbery, with an "arming clause" pursuant to section 12022, subdivision (a)(1), is not a "violent felony" within the meaning of section 667.5.

## II.

The majority's restrictive standard is problematical not only because it defeats the purpose of the sentencing statutes and conflicts with the better reasoned cases interpreting those laws, but because it creates a constitutional problem.

The imposition of penal sanctions clearly implicates rights protected under the due process clauses of the California Constitution (Cal. Const., art. I, § 7, subd. (a); *id.*, § 15). The California Supreme Court has held "that the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with both respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests." (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622].)

"[I]dentification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citations.]" (25 Cal.3d at p. 269.)

Applying the foregoing principles, the Supreme Court had little difficulty in *People* v. *Ramirez, supra,* in holding that the Director of Corrections could not exclude an inmate from the California Rehabilitation Center, which resulted in a state prison sentence, without, among other things, providing the inmate a statement of the grounds for excluding him, "access to the information the Director considered in reaching his decision, and notice of the right to respond." (25 Cal.3d at p. 275, fn. omitted.) Similarly, in *In re Jackson* (1987) 43 Cal.3d 501 [233 Cal.Rptr. 911, 731 P.2d 36], the court upheld prison procedures for administratively adjudicating disciplinary charges based on confidential information because Department of Corrections regulations required a hearing officer to personally make a finding on

the informant's reliability and truthfulness. The court observed, however, that due process requirements were met only if the disciplinary record "contain[s] information (confidential or otherwise) from which a reviewing court can conclude the hearing officer *actually made* a reliability and truthfulness determination, and that the determination is supported by evidence. [Citations.]" (*Id.*, at p. 516, italics added.)

If due process dictates that a state prison inmate excluded from the California Rehabilitation Center (CRC) or subjected to discipline must be provided a statement of reasons—even though such a statement is not required to be given by statute—how can an individual be denied a statement of the reasons for a consecutive sentence imposing additional prison time—which *is* required by statute? The private interest affected, personal liberty, is of the highest order. The risk of erroneous deprivation of that interest is bound to be diminished if the court is required to reveal the basis of the deprivation; a requirement that does not necessitate "additional or substitute procedural safeguards," but merely rigorous appellate enforcement of an existing statutory requirement. The "dignitary interest" in informing a criminal defendant of the reasons for his sentence should be obvious. " 'The very essence of arbitrariness is to have one's status redefined by the state without an adequate explanation of its reasons for doing so. . . . [T]he respect for individual autonomy that is at the foundation of procedural due process imposes a distinct obligation upon the government to explain fully its adverse status decision.' [Citation]." (*People v. Ramirez, supra,* 25 Cal.3d at p. 276.) Finally, no governmental interest is served by permitting a trial judge to dispense with the need to state reasons for a "sentencing choice." On the contrary, enforcement of this requirement is essential not only to permit meaningful judicial review and prevent careless sentencing, but to preserve public confidence that criminal sentencing is "careful, reasoned and equitable." (*People v. Martin* (1986) 42 Cal.3d 437, 450 [229 Cal.Rptr. 131, 722 P.2d 905].)

It is irrelevant to the due process analysis adopted by our Supreme Court whether imposition of the duty to provide a statement of reasons will likely result in a more favorable determination. As stated in *Ramirez,* even in cases in which giving the inmate a statement of the grounds for excluding him or her from CRC and an opportunity to respond "is unlikely to affect the outcome of the decision, it nevertheless promotes important dignitary values that underlie due process. . . . 'Only through [oral] participation can the individual gain a meaningful understanding of what is happening to her and why it is happening. Moreover, providing the opportunity to react—to register concern, dissatisfaction, and even frustration and despair—is the best method to promote the feeling that, notwithstanding the substantive

result, one has been treated humanely and with dignity by one's government.' [Citation.]" (*People* v. *Ramirez, supra*, 25 Cal.3d at p. 275.)

I agree with my colleagues that the judgment of conviction must be affirmed. For the foregoing reasons, however, I would remand the matter for resentencing.

A petition for a rehearing was denied May 4, 1994, and appellant's petition for review by the Supreme Court was denied July 14, 1994. Mosk, J., was of the opinion that the petition should be granted.