Filed 4/10/14  P. v. Downer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063255 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS234382) |
| PAUL R. DOWNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Affirmed in part and reversed in part with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, the 74-year-old defendant pled guilty to misappropriating bank accounts, social security and insurance funds that belonged to his disabled 95-year-old mother. The record shows that in imposing 365 days of jail time as a condition of probation and in determining the amount of defendant's restitution fine, the trial court relied on a calculation of the mother's loss, which was more than twice her actual loss. Because the trial court's statements at sentencing show that the miscalculation influenced both the jail time imposed as well as the amount of restitution, we reverse and remand for resentencing and recalculation of the amount of defendant's restitution.

FACTUAL AND PROCEDURAL BACKGROUND

In 2000, defendant and appellant Paul R. Downer was in his early 60's and unmarried. In April 2000, Downer and his mother, who was in her mid-80's, purchased a home that they shared.

In 2004, Downer retired from his job as a school district network administrator and got married. Downer and his new wife both took care of his mother, who was suffering from advancing stages of dementia. The three adults relied principally on their respective social security retirement allowances and some retirement income.

In 2008, Downer and his mother lost their home to foreclosure. Downer, his wife and his mother then moved into a rental property that Downer's stepdaughter owned.

In July 2009, Downer's mother's health began to deteriorate. She was hospitalized with pneumonia and difficulty with her left leg. Following her hospitalization, she went to a convalescent hospital, Fredericka Manor, in order to receive rehabilitation for her

2

leg.  Downer's mother quickly exhausted the Medicare benefits available for her care at Fredericka Manor.

Shortly after Downer's mother was admitted to Fredericka Manor, Downer became the payee on his mother's $1,479 monthly social security allowance.  At Fredericka Manor's instance, Downer also applied for MediCal coverage for his mother.

Downer's initial MediCal application was denied because his mother owned a life insurance policy with a $7,400 cash value.  Downer arranged to be paid the proceeds of the life insurance policy, which he deposited in a bank account he owned.  Downer also transferred $10,000 from his mother's savings account to his personal bank account.

In April 2010, Downer's mother began receiving MediCal benefits, which were paid to Fredericka Manor.  However, by that time, she had incurred $75,000 in unpaid medical bills at Fredericka Manor.

After making one or two payments to Fredericka Manor, Downer made no further payments to the facility.  Instead, by his own admission, Downer used the social security allowance he received on his mother's behalf, as well as the proceeds of her life insurance policy and savings account, to pay his own living expenses and personal debts.

Because of its large unpaid bill, in September 2011, Fredericka Manor reported to law enforcement officials its suspicion Downer was misusing his mother's funds to law enforcement officials.  In October 2011, after it reported its suspicions, Fredericka Manor became the payee for Downer's mother's social security allowance.

3

In July 2012, Downer was charged in a complaint with three counts of grand theft and one count of financial elder abuse. (Pen. Code,[1] §§ 484, 487, subd. (a) & 368, subd. (d).)

In September 2012, Downer pled guilty to one count of grand theft. In exchange for his plea, the People agreed that his sentence would be limited to a 16-month "lid" on incarceration.

At his sentencing hearing, a Social Security Administration (SSA) investigator testified that between September 2009 and October 2011, Downer had received a total of $32,000 in funds that belonged to his mother. The investigator testified that upon entry of an order requiring that Downer pay $32,000 in restitution, the SSA would pay that amount to Fredericka Manor and recover it from Downer by reducing the amount of his future social security allowance.

An investigator for the People reported that, by his own admission, Downer had taken $17,000 from his mother's life insurance policy and bank account and used those funds for his personal expenses and debts. An employee of Fredericka Manor testified that Downer's mother had incurred $75,000 in unpaid costs as a patient and resident.

The probation department prepared a report which, although it noted that Downer was 74 years old and had no criminal record, nonetheless stated: "The probation officer seriously considered a recommendation for prison given the significant losses to the

---

[1] All further statutory references are to the Penal Code.

victims, which will likely exceed $100,000." Instead, the probation department recommended three years of probation with 180 days of custody.

In imposing 365 days of custody as a condition of three years of probation, the trial court stated: "I think it's true what the prosecutor says, that the defendant is using his age in an attempt to get out of what is a serious crime. [¶] I mean, I find it reprehensible and outrageous that you would steal over $100,000 in funds from your mother, who's 95 years old and has dementia and is living in a facility, and use that money to do things such as go on vacations.

"And if the defendant was 40 years old or 50 years old, I don't think it would be an issue whether or not he would do jail time, and to just put him on probation with no consequences would be not even a slap on the hand and say that this theft of over $100,000 is acceptable. I mean, the victim here is extremely, extremely vulnerable. The acts that the defendant did were -- involved great sophistication. The loss was great. [¶] . . . [¶]

"I think that I'm taking into account his age and his lack of a criminal record in not sending him to prison, but I am going to order that he be committed to the custody of the sheriff for 365 days because I think that that's what the case is worth."

In addition to 365 days of custody, the trial court ordered that Downer pay Fredericka Manor $75,833, the social security administration $32,019 and his mother $17,359 in restitution. The court also imposed $838 fines and penalty assessments under sections 672 and 1202.5, and a $240 restitution fine under section 1202.4.

5

Because the record shows that, in total, Downer stole $49,468 from his mother, the Attorney General concedes the restitution ordered by the trial court was excessive. The Attorney General argues that we should remand this case for recalculation of the restitution ordered and affirm the conviction in all other respects. Downer argues that the trial court's error in calculating the amount he stole influenced not only the amount of restitution imposed by the trial court but also the imposition of 365 days of custody as a condition of probation. We agree with Downer and reverse both the restitution ordered as well as the custody imposed as a condition of probation.

Reversal of the restitution order is required because, as the Attorney General concedes, there was no factual basis for ordering $125,261 in restitution. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1125 ["there must be a factual and rational basis for the amount ordered"].) However, we must also reverse the sentence of three years of probation and 365 days of actual custody.

Preliminarily, we note that although it appears Downer has served the jail time required by the trial court's sentence, the sentence imposed is not moot. Downer is still on probation and is in constructive custody. (See *People v. Villa* (2009) 45 Cal.4th 1063, 1069.) In addition, if, on remand, the trial court determines that in light of the actual amount of loss attributable to Downer's conduct less in the way of actual incarceration was required, a sentence with a shorter term of custody will benefit him by constructively advancing the start date from which the five-year "washout" period set forth in section

667.5 subdivision (b) will be calculated.  In the event Downer is found guilty of another felony, the washout provision might relieve him of the one-year enhancement otherwise required by section 667.5.  (See *People v. Harris* (1987) 195 Cal.App.3d 717, 720.)

Contrary to the Attorney General's argument, the record demonstrates that the trial court's miscalculation of the loss caused by Downer's conduct did impact the requirement and amount of incarceration imposed by the trial court.  We note that, in light of his erroneous calculation of the size of the loss, the probation officer considered recommending a prison sentence and that, in finding that probation was not appropriate, the trial court itself expressly relied on the size of the loss and then, in imposing 365 days of custody, the trial court again referred to what it believed the case "was worth."  These circumstances demonstrate that, in the absence of the substantial overstatement of the amount Downer stole, it is probable Downer would have received a more favorable sentence.  (See *People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1684 [sentencing error reviewed under *People v. Watson* (1956) 46 Cal.2d 818, 836].)  Thus, a remand for resentencing is warranted.

## II

Downer also challenges the trial court's imposition of $838 in fines and penalty assessments.  A fine of $38 was imposed under section 1202.5, and the parties agree $800 of the fines and assessments were presumably imposed under section 672.  On appeal, Downer contends that imposition of the section 1202.5 fine precluded imposition of any fine under section 672.

7

Section 1202.5 provides in pertinent part: "(a) In any case in which a defendant is convicted of any of the offenses enumerated in Section 211, 215, 459, 470, 484, 487, subdivision (a) of Section 487a, or Section 488, or 594, the court shall order the defendant to pay a fine of ten dollars ($10) *in addition* to any other penalty or fine imposed. . . . [¶] (b)(1) All fines collected pursuant to this section shall be held in trust by the county collecting them, until transferred to the local law enforcement agency to be used exclusively for the jurisdiction where the offense took place. All moneys collected shall implement, support, and continue local crime prevention programs."

Section 672 states: "Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding one thousand dollars ($1000) in cases of misdemeanors or ten thousand dollars ($10,000) in cases of felonies, in addition to the imprisonment prescribed."

The provisions of section 1202.5 make it clear that the fines it requires are in addition to any other fines imposed by the court and are for the specific purpose of funding crime prevention as opposed to providing punishment, the subject of section 672. As an expressly additional fine imposed for a specific funding purpose, the $38 fine and assessment imposed under section 1202.5 did not prevent the court from also imposing a fine under section 672. (See *People v. Clark* (1992) 7 Cal.App.4th 1041, 1044-1046 [§ 11377 AIDS education program fine of $70 did not preclude imposition of $500 fine and penalty assessment under § 672].)

8

Finally, Downer challenges the trial court's imposition of a $240 restitution fine under section 1202.4. At the time Downer committed the theft from his mother, the minimum fine under section 1202.4 was $200; at the time Downer was sentenced, the minimum fine was $240. (See stats. 2011, § 1, ch. 45.) At all material times, the maximum fine permissible under section 1202.4 was $10,000.

Because at the time Downer committed the thefts he was subject to a $10,000 fine under section 1202.4, imposition of a fine above the minimum required at the time the offense was committed, but below the existing maximum, did not offend the guarantee against imposition of an ex post facto punishment. (See *People v. Snook* (1997) 16 Cal.4th 1210, 1221 [ex post facto prohibition prevents increases in punishment beyond what was prescribed at time of offense].) Moreover, there is nothing in the record that indicates the trial court intended to impose the statutory minimum that existed at the time of the crimes; rather, it is quite possible the trial court determined the minimum in effect at the time of sentencing was more appropriate. Thus, we find no error or abuse of discretion in imposition of the $240 restitution fine.

DISPOSITION

The judgment is reversed insofar as it imposes restitution in the amount of $125,261 and three years of probation on condition Downer serve 365 days of custody and remanded for further proceedings consistent with the views we have expressed. In all other respects, the judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


McDONALD, J.