Filed 10/8/15  P. v. Mota CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B252938 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA410693) |
| v. | |
| JOSE J. MOTA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Vacated and remanded in part; affirmed in part.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant Jose J. Mota.

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant Karen Garcia.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, William H. Shin and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose J. Mota and Karen Garcia were convicted of possession of a firearm after police observed Mota pass the gun to Garcia on a street in Los Angeles and recovered from Mota's cell phone a photograph of the gun. On appeal, Mota contends the photograph was inadmissible for several reasons and the prosecution failed to establish in which jurisdiction the offense took place. We affirm the judgment but remand for resentencing of Mota.

## BACKGROUND

On April 27, 2013, Los Angeles Police Officers Francisco Diaz and David Lopez observed Jose Mota and Karen Garcia walking on Crawford Street approaching 36th Street in Los Angeles. When Mota saw them, he removed a handgun from his waistband and put it in Garcia's purse. The officers stopped and searched them, recovering the gun from Garcia's purse and, ultimately, a cell phone from Mota that had a text message with a photograph of a gun, with accompanying text that read, "Chubby .45 for 550. Holds 8 L.A." The message had been sent by someone known as "Chubby" to Mota's phone two days earlier.

Mota was charged with possession of a firearm in violation of Penal Code section 29820, subdivision (b) [former juvenile offender may not possess a firearm until the age of 30 years], and Mota and Garcia were both charged with carrying a concealed firearm (*ibid*., § 25400, subd. (a)(2)) and carrying a loaded unregistered handgun on a public street in an incorporated city (*ibid*., § 25850, subd. (a)).[1] It was further alleged that Mota had suffered two serious felony juvenile adjudications in 2000. (*Ibid*., §§ 667, subds. (b)-(j), 1170.12.) A jury found defendants guilty and all allegations true, and after a bifurcated bench trial the court found Mota had been adjudicated in juvenile proceedings to have committed robbery and attempted robbery.

Mota was sentenced to six years in prison, comprising the high term of three years on the possession count, doubled for the prior "strike" conviction, plus the same sentence

---

[1] Undesignated statutory references will be to the Penal Code.

2

for each of the other counts, stayed pursuant to section 654.  Garcia was placed on three years formal probation and ordered to serve 365 days in county jail.  They both appealed.

## DISCUSSION

Mota contends the gun photograph on his phone was inadmissible for several reasons and the court committed a sentencing error.  Both defendants contend insufficient evidence supported their conviction for possession of an unregistered handgun in city limits.

## A.      Cell Phone Evidence—Authentication

At trial, the prosecution offered into evidence (1) Mota's cell phone, with the screen depicting the text message and photograph of a gun, and (2) a photograph of that screenshot (collectively "the photographs").  Police testified that metadata accompanying the message indicated it had been sent two days before defendants were arrested.  Police further testified that the gun depicted in the photographs "could be" the same as that recovered from Garcia's purse, in that both were the same make and model and had the same rubber grips, but a definitive identification could not be made because the serial number was not visible.  Mota argues the trial court abused its discretion when it admitted the photographs into evidence with insufficient authentication.  We disagree.

A photograph must be authenticated before being admitted into evidence.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)  After a preliminary showing of relevance, "the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error.  [Citation.] . . .  The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case.  [Citation.]  The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered.  [Citation.]  Essentially, what is necessary is a prima facie case.  'As long as the evidence would support a finding of authenticity, the writing is admissible.  The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.'"  (*Id*. at p. 267.)  "A photograph or video recording is

typically authenticated by showing it is a fair and accurate representation of the scene depicted." (*Id*. at pp. 267-268.)  The foundation "may be supplied by . . . witness testimony, circumstantial evidence, content and location."  (*Id*. at p. 268.)

Mota argues the photographs were inadmissible because they were not "authenticated" in such a manner as would have proven the gun they depicted was the same gun recovered from Garcia.  The argument is without merit.  The photograph on Mota's cell phone depicted a gun that was the same make and model and had the same rubber grips as the gun recovered from Garcia's purse.  The photograph was accompanied by a text message indicating someone had offered the gun for sale two days earlier.  This evidence tended in reason to show that Mota was offered and had purchased the gun, and therefore possessed it.  That the serial number was not visible left room for the equally reasonable counter-inference that the guns were not the same.  But "'[t]he fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.'"  (*People v. Goldsmith*, *supra*, 59 Cal.4th at p. 267.)  Authentication need not definitively establish the ultimate fact in support of which the evidence is offered, it need only give rise to a reasonable inference that the evidence is what it purports to be.

Mota argues the text message accompanying the photograph was inadmissible because the prosecution failed to "authenticate" it by proving when it was received.  Although the metadata indicated the message was sent two days prior to the arrest, Mota argues, no evidence indicated Mota received it early enough to afford him time to purchase the gun before his arrest.  The argument is without merit because the timing of the text message is irrelevant to its authenticity.  To authenticate a document the prosecution need establish only that it is what it purports to be; the prosecution need not establish when the defendant first became aware of it.

The evidentiary impact of the text message was to demonstrate Mota received an offer to purchase a handgun in sufficient time to make the purchase before he was arrested.  The time the message was sent—two days prior to Mota's arrest—tends in reason to support the inference that he received it two days before the arrest, and

4

therefore had enough time to make the purchase. Although a telecommunications carrier may on occasion delay or lose text messages, in normal practice they arrive within seconds or minutes of having been sent. In any event, issues regarding the reliability of computer software "'"may be developed on cross-examination and should not affect the admissibility of the [computer record] itself." [Citation.]'" (*People v. Martinez* (2000) 22 Cal.4th 106, 132.) Any counter-inference of untimeliness would therefore go to the weight of the evidence for its ultimate purpose, not its authenticity.

**B.** **Cell Phone Evidence—Hearsay**

Mota contends the photographs and text message were inadmissible hearsay. The argument is without merit.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "[D]ocuments containing operative facts, such as the words forming an agreement, are not hearsay." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316.) Evidence of a statement "made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy" is not made inadmissible by the hearsay rule. (Evid. Code, § 1223, subd. (a).) A photograph is not hearsay, but rather "demonstrative evidence, depicting what the camera sees." (*People v. Cooper* (2007) 148 Cal.App.4th 731, 746.)

"Chubby's" offer to sell a handgun to Mota was an operative fact—a contractual offer—made in furtherance of Chubby's participation in Mota's quest to violate section 29820. It was therefore either not hearsay or, even if it was hearsay, not inadmissible.

**C.** **Cell Phone Evidence—Undue Prejudice**

Mota argues the cell phone evidence was unduly prejudicial. We disagree.

Under Evidence Code section 352, the trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "The governing test . . . evaluates the risk of '*undue*' prejudice, that is, '"evidence which uniquely tends

5

to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,"' not the prejudice 'that naturally flows from relevant, highly probative evidence.'" (*People v. Padilla* (1995) 11 Cal.4th 891, 925.) The trial court's ruling on the admission or exclusion of evidence under Evidence Code section 352 will not be disturbed on appeal "*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

The evidence showed that police observed Mota in possession of a gun before he passed it to Garcia. The probative value of the photographs and text message stems from their tendency in reason to show Mota had been offered the same gun two days prior, which supported the inference that he had access to it, acquired it, and therefore possessed it. The evidence was not unduly prejudicial because a photograph of a gun does not tend to evoke emotional biases. Accordingly, the trial court committed no error in admitting the evidence.

## D. Cell Phone Evidence—Due Process

Mota contends admission of the photographs and text message violated his due process rights under the Fourteenth Amendment because the evidence was unreliable, rendering the trial fundamentally unfair. Our rejection of Mota's arguments on state law grounds necessarily leads to rejection of his constitutional arguments. (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.) As discussed, the photographs and text message were properly admissible and gave rise to reasonable inferences that Mota was free to rebut. That he was unable to do so did not render the trial unfair.

## E. Motion for Acquittal

Mota and Garcia were convicted of violating section 25850, which in pertinent part prohibits "carrying a loaded firearm . . . while in any public place or on any public street in an incorporated city." (§ 25850, subd. (a).) However, the prosecution failed during its case-in-chief to present explicit evidence that Crawford Street approaching 36th Street, where defendants were arrested, is located in the incorporated City of Los Angeles.

6

At the close of the prosecution's case-in-chief, defendants moved pursuant to section 1118.1 for acquittal of the possession charge. The trial court denied the motion, then later reminded the prosecution that it may have failed to establish one of the elements necessary under section 25850. Thereafter, during rebuttal, the prosecution offered testimony that Crawford Street where defendants were arrested is in Los Angeles, which is incorporated.

Defendants contend the denial of the motion for acquittal was error because the prosecution failed during its case-in-chief to present evidence that Crawford Street is located in the incorporated City of Los Angeles. The argument is without merit.

"In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.) When reviewing a claim the trial court erred by denying a motion for acquittal under section 1118.1, we apply the same standard as when evaluating the sufficiency of evidence to support a conviction, but we consider only the evidence in the record at the time the motion was made. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 371; *People v. Smith* (1998) 64 Cal.App.4th 1458, 1464.) Thus, we review the evidence presented during the prosecution's case-in-chief in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. (*People v. Tully* (2012) 54 Cal.4th 952, 1006.)

Here, the arresting officers, Francisco Diaz and David Lopez, testified they were employed by the Los Angeles Police Department, were assigned to patrol the Newton Division, and stopped defendants while they were on patrol. Diaz was shown an aerial photograph of the arrest site that was captioned "Southeast Los Angeles." Further, the court was required to take judicial notice of the fact that Los Angeles is an incorporated city. (Evid. Code, § 451; Gov. Code, § 57380 ["Courts shall take judicial notice of the

7

organization and existence of cities incorporated pursuant to this division"]; see *People v. Vega* (1971) 18 Cal.App.3d 954, 958.) This constituted substantial evidence that the arrest occurred in the incorporated City of Los Angeles.

**F.     Mota's Sentence**

Mota contends the trial court relied on impermissible factors to justify sentencing him to the high term of three years on the possession count. He requests that we impose a midterm sentence or remand for resentencing.

Before trial, Mota asked the court to strike his prior strike adjudication as part of its assessment of a prosecution plea offer. Mota's counsel admitted he had been in California Youth Authority custody from 2000 to 2005, was then deported, and returned to the United States in 2007, and there was a current Immigration and Customs Enforcement hold on him. At the sentencing hearing, after finding Mota had been adjudicated as having committed robbery and attempted robbery in May 2000, the court asked defense counsel whether she wished to be heard before sentencing. Counsel advised the court that although Mota had suffered a "strike" in 2000, no other factors in aggravation were brought out at trial, and the strike was 13 years old, with no intervening convictions. The prosecution pointed out that Mota was a well known gang member, and because he had been deported in 2005 it was unknown how many of the last 13 years had been spent crime free.

The court stated it had reviewed the probation report and noted that Mota "was previously deported as a criminal, indicating failure to obey all laws," and since suffering his prior adjudications had "picked up this case." "Noting those circumstances in aggravation," the court sentenced Mota to three years on count 1, doubled for the prior strike, as to each of the three counts upon which he was convicted, staying the sentence for counts two and three. Mota offered no objection.

8

Under section 1170, subdivision (b), a trial court has broad discretion in selecting the base term for an offense.[2] (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) The court may consider the record in the case, the probation report, evidence introduced at the sentencing hearing, and "any other factor reasonably related to the sentencing decision," and "shall select the term which, in the court's discretion, best serves the interests of justice." (Cal. Rules of Court, rule 4.420, subd. (b); § 1170, subd. (b).) Imposition of an upper term sentence is permissible when based upon even a single aggravating circumstance of the defendant's criminal history. (*People v. Black* (2007) 41 Cal.4th 799, 813, 818; *People v. Osband* (1996) 13 Cal.4th 622, 728.) The court must "set forth on the record the reasons for imposing the term selected," and "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1107, subd. (b).) The requirement that reasons be stated to support a sentencing decision facilitates appellate review and "imposes an intellectual discipline that may lead to better reasoned decisions." (*People v. Martin* (1986) 42 Cal.3d 437, 450.)

Here the court articulated no permissible factor as the basis for its selection of the upper term. The first factor upon which the court relied, that Mota "was previously deported as a criminal, indicating failure to obey all laws," is unclear. Respondent contends the court meant that Mota's criminal history was an aggravating factor. Accepting that as true, the court was nevertheless incorrect. A defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings may

---

[2] Section 1107, subdivision (b) provides in pertinent part, "In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

constitute an aggravating factor for purposes of sentencing when they "are numerous or of increasing seriousness." (Cal. Rules of Court, rule 4.421, subd. (b)(2).) Here, Mota was adjudicated in juvenile proceedings on May 25, 2000 to have committed robbery and attempted robbery. After serving five years in California Youth Authority custody, he was deported. Nothing in the record suggests he committed any crime after the robberies, much less than the crimes were numerous or of increasing seriousness. The fact that he was deported does not indicate he committed a crime after the robberies.

The second factor upon which the court relied, that Mota "picked up this case" since his sustained juvenile petition, can never be an aggravating factor, as sentencing always involves an individual who by definition has "picked up" the current case.

Respondent argues there is evidence in the probation report that Mota was a known gang member patrolling rival gang territory shortly after one of his fellow gang members had been shot by a rival gang, leading to the reasonable inference that he was looking to retaliate. Perhaps so, but the trial court did not rely on this factor. On the contrary, the court granted the defense's request before trial to exclude gang evidence on the ground that it would not be relevant to the case-in-chief (there were no gang allegations), and the matter was not revisited. The factors upon which the court did rely were improper.

Even when the sentencing court relies on improper criteria for a sentencing choice, "remand for resentencing is not automatic; we are to reverse the sentence only if 'it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.'" (*People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1684.)

But based on the record in this case, it is reasonably probable that the court's sentencing choice would be different on remand. Although the probation report makes several references to gang activity, no gang allegations were made and no gang evidence was adduced at trial. The court might rely on Mota's having induced Garcia to participate in the crime as an aggravating factor (Cal. Rules of Court, rule 4.421, subd. (a)(4)), but given that she herself was a known gang member and apparently willing

10

participant in the crime and that the court chose not to rely on this seemingly obvious factor, we conclude it is not reasonably probable the same sentence will be reached. We will therefore vacate Mota's sentence and remand the matter for resentencing.

## DISPOSITION

Mota's sentence is vacated and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


MOOR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.