Filed 4/14/15  P. v. Jenkins CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060810 |
| v. | (Super.Ct.No. FWV1303862) |
| JEFFREY BLAKE JENKINS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed with directions.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Jeffrey Blake Jenkins of first degree

1

burglary with a person present (count 1; Pen. Code, § 459)[1], assault with a deadly weapon on victim number one (Ramon) (count 2; § 245, subd. (a)(1)), and assault with a deadly weapon on victim number two (R.D.) (count 3; § 245, subd. (a)(1)). Defendant admitted a prior strike conviction (§§ 170.12, subds. (a)-(d), 667, subds. (b)-(i)). The court sentenced defendant to an aggregate, determinate term of 16 years' incarceration consisting of the following: (1) the aggravated term of six years, doubled pursuant to the prior strike conviction, on count 1; (2) one-third the midterm of three years, one year, doubled pursuant to prior strike conviction, two years, consecutive on count 2; and (3) one-third the midterm of three years, one year, doubled pursuant to prior strike conviction, two years, consecutive on count 3.

On appeal, defendant contends the trial court abused its discretion in imposing the aggravated term on count 1 and consecutive terms on counts 2 and 3. Defendant argues defense counsel below provided constitutionally ineffective assistance of counsel (IAC) to the extent he failed to raise any issues at sentencing and, thereby, forfeited the issues, and by failing to argue certain mitigating factors to the court. Defendant additionally claims the court erred, pursuant to section 654, in imposing, without staying, sentence on count 2. Finally, defendant maintains the abstract of judgment must be corrected. The People agree with defendant's latter contention. We shall direct the superior court to stay imposition of the sentence on count 2 and correct the abstract of judgment. In all other respects, the judgment is affirmed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTUAL HISTORY

Ramon testified that on November 19, 2013, he was at his home watching television alone in the living room. Four of his children were also home. Ramon's nine-year-old daughter (E.D.) came running into the house from the backyard screaming that a man was calling for Ramon. E.D. appeared scared; she ran into her room. Defendant walked quickly into the house behind E.D. Defendant tried to stab Ramon with two, six- to seven-inch-long knives defendant held, one in each hand.

Ramon stood and called for his oldest son (Rene). Rene came into the room and kicked defendant. Ramon picked up a coffee table with which to defend himself. Defendant hit Ramon on the right side of Ramon's head with defendant's hand.

Ramon's youngest son (R.D.) came into the room. Ramon threw the coffee table at defendant. Defendant left the home through the backyard. Ramon went to the hospital with R.D.

Rene testified he was in his room when he heard a man screaming. He opened the door and saw "[defendant] hitting my dad while he was sitting on the couch." Defendant had a knife in each hand. Defendant hit Ramon three times. Rene screamed at defendant; defendant stopped hitting Ramon and started "saying some crazy things like that my dad has dead bodies in the house and that he killed somebody." Defendant exited the house into the back yard. Rene followed him, and defendant turned and was walking backwards facing Rene. As defendant reached his side of the house, he said, "'I'll be back.'"

3

R.D., who was 13 years old at the time of the incident, testified he was in Ramon's room when he heard Ramon call for Rene. R.D. came out of the room to see defendant attacking Ramon. Defendant was cursing at Ramon and swinging what appeared to be two black handles in his hands. Defendant was wearing red shorts.

Defendant's hand came back and hit R.D. in the stomach where he "felt a pinch" and got cut. R.D. went back into Ramon's bedroom to call the police. He then "felt . . . something dripping on my stomach. And I pulled up my shirt and I saw . . . blood." R.D. told police defendant stabbed him. He went to the hospital in an ambulance where he received one stitch. R.D. still had a scar from the wound.

Ramon's daughter, L.D., who was around 17 years old at the time of the incident, testified she was in her room when she heard a door slam and E.D. crying. L.D. asked E.D. what was wrong; E.D. said "'My dad'" five times. L.D. went out of the room to see what had happened. She saw defendant with knives in his hands yelling and cursing at Ramon. Defendant swung at Ramon with the knives in his hands.

Ramon pushed the table to use "as a shield to protect himself." Defendant left saying he would be back. R.D. came out and told L.D. he had been stabbed; he showed her his bleeding stomach.

Defendant's sister, Jearolyn, testified she was home, next door to the victims' house, on the day of the incident. Defendant had been singing and talking to himself in his room. At some point, it appeared defendant had left the home. Defendant came running back into the house through the kitchen, upset and mad, with his fists up and

4

clenched. Defendant said "'I'm tired of this SOB molesting me.'" Defendant went to his bedroom, took off his shorts, and put them in the laundry basket.

The responding officer testified he saw R.D. inside an ambulance with a very small, diamond shaped puncture wound to his right midsection, which was bleeding. He conducted an infield showup of defendant with both Rene and R.D. R.D. was scared, nervous, overwhelmed, confused, perplexed, and a little shy. He was unable to positively identify defendant as the perpetrator mentioning "that he did not have red shorts on, so he wasn't certain." Rene was immediately able to positively identify defendant as the perpetrator.

Another officer who responded to the location interviewed Jearolyn. Jearolyn told him defendant ran back into their home, quickly removed his red shorts, and shoved them to the bottom of the laundry hamper. The officer recovered the shorts.

A West Valley Detention Center Facilities Coordinator and Custodian of Records testified that a phone call between defendant and another individual had been recorded while defendant was incarcerated. The People played the phone call for the jury. During the phone call, defendant stated, "That fool lied up in court—man big time, we caught—we caught him in tons of lies, man didn't get stabbed or anything. I just punched that dude one time. [¶] . . . [¶] He don't know—what happened is he grabbed the table and tried to swing it at me and then the nail scratched him on the side and um he tried to say that I had a knife."

5

DISCUSSION

A.     Imposition of the Upper Term on Count 1 and Consecutive Terms on

Counts 2 and 3.

Defendant contends the court erred in imposing the aggravated term on count 1 and consecutive terms on counts 2 and 3 by relying on factors already constituting elements of the offense, by relying on vague and legally insufficient reasons, by failing to consider mitigating factors, by misweighing the aggravating and mitigating factors, and by failing to articulate a legally sufficient basis for doing so.  Defendant also maintains defense counsel provided constitutionally IAC by failing to raise any sentencing issues below, which might result in forfeiture of the issues on appeal, and in neglecting to argue certain purported mitigating factors.  We disagree.

1.     Forfeiture

The People contend defendant forfeited the sentencing issues he raises by failing to object below.  We agree.

After defendant admitted the prior strike conviction allegation, the court continued the matter for preparation of a probation officer's report.  The probation officer's report, filed on February 28, 2014, reflects defendant's criminal history.  Among other misdemeanors and infractions, defendant had incurred convictions for felony assault with a deadly weapon in 1987, a felony drug offense in 1990 for which he was sentenced to prison, felony battery in 1993 for which he was sentenced to prison, and felony robbery in 2004 for which he was also sentenced to prison.  Defendant had incurred one violation of parole.

6

The probation officer noted she had "learned from . . . defendant's sister that he might have possessed controlled substances in the past and has mental health problems." "[D]efendant's mother also confirmed he has mental health issues and suffers from paranoid schizophrenia. She added the defendant was shot in the head about four months ago and has four bullets lodged in his skull. He is also a heavy drug user and [she] felt that he was possibly under the influence of drugs." In the search of defendant's room, officers had found less than a gram of methamphetamine and a pipe. One officer opined "defendant had some sort of delusional idea the victims[] had sexually molested him at some point."

When interviewed by the probation officer, defendant stated he caught a neighbor who had stolen $200 from him and chased her to the victims' home. He knocked on the door. A male came out with whom defendant had a confrontation. Defendant had no weapon. The whole family came out and started to chase defendant and throw things at him. Defendant said "he was never in possession of a weapon during this incident." However, "defendant added the person he struck sustained 'one little' stitch." Defendant "denied a history of mental health problems."

The probation officer noted as aggravating factors that the "crime involved great violence, great bodily harm, and/or other acts disclosing a high degree of cruelty, viciousness[,] and callousness;" "[t]he defendant was armed with or used a weapon at the time of the offense;" "[t]he victims were particularly vulnerable;" "[t]he manner in which the crime was carried out indicates planning, sophistication[,] or professionalism[;]" "[t]he defendant has engaged in violent conduct that indicates a serious danger to

7

society;" "[t]he defendant's prior convictions as an adult are numerous and of increasing seriousness;" "[t]he defendant has served prior prison terms;" and "[t]he defendant's prior performance on parole was unsatisfactory." The probation officer found no factors in mitigation.

With respect to factors affecting imposition of consecutive or concurrent sentences, the probation officer noted "[t]he crimes and their objectives were predominantly independent of each other"; "[t]he crimes did involve separate acts of violence or threats of violence"; and "[t]he defendant has not expressed remorse for his criminal actions, denied he stabbed [R.D.] and insisted he was not in possession of a weapon during the commission of this offense." The probation officer recommended imposition of the upper term on count 1 and consecutive terms on counts 2 and 3 for a determinate term of 16 years' incarceration.

On March 14, 2014, the date of sentencing, the court asked if respective counsel had copies of the probation report. Defense counsel responded he did. The court asked if either side had any comments. Defense counsel responded that he did. Defense counsel then argued to the court that it "not follow probation's recommendation, and probation's recommendation is 16 years. They are recommending the aggravated time. [¶] We are going to ask the Court to consider the mitigated or midterm." Defense counsel argued there were mitigating factors. The People argued for the aggravated term based on defendant's prior criminal history, increasing criminal history, and crimes involving violence. The court asked for further comments. Defense counsel responded, "No, I'll submit it on my previous arguments, your Honor."

8

Before imposing sentence, the court observed, "I would like to state for the record, the Court . . . carefully listened to the trial. And the most disturbing part about this, in the Court's mind, is that the home is where someone should feel safe. There were children involved in this. And a young person, I believe he was 13 years old, was unnecessarily injured. [¶] The Court feels that there was more going on. This simply didn't make sense to the Court. But all the Court has before it is what happened. And what happened was inexcusable. Because once you enter somebody's private home with a weapon, that escalates things to an intolerable degree. And in combination with [defendant's] history, the Court has no problem whatsoever imposing the aggravated [term] just because the circumstances were so egregious, and in the Court's mind, completely unnecessary."

The forfeiture doctrine applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it *double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons*." (*People v. Scott* (1994) 9 Cal.4th 331, 353, italics added.) "Of course, there must be a meaningful opportunity to object to the kinds of claims otherwise deemed [forfeited]. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Id.* at p. 356.) "[A] meaningful opportunity to object means that the defendant be given the opportunity to address the court on the matter of sentence

9

and to object to any sentence or condition thereof imposed by the court." (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84 [court not required to issue tentative ruling to foreclose application of forfeiture rule where defense counsel had an opportunity to address the court regarding sentencing].)

Here, defense counsel had ample opportunity to and actually did address the sentencing issues before the court. Defense counsel had received the probation officer's report prior to the sentencing hearing. Thus, defense counsel had the probation officer's recommendation of the precise sentence, which the court eventually imposed, and the bases for that recommendation prior to the sentencing hearing. The court expressly afforded defense counsel the opportunity to address the recommended sentence. Defense counsel availed himself of that opportunity. Defense counsel argued there were mitigating factors and urged the court to consider imposing the lesser or midterm sentence. After the People argued otherwise, the court afforded defense counsel another opportunity to argue the sentencing issues. Defense counsel declined the offer. Therefore, defendant had opportunity to, and actually did, address the court regarding the sentencing issues, thus forfeiting on appeal any further arguments he could have made.

2.     IAC

Defendant contends trial counsel below committed constitutionally IAC to the extent he failed to address any issues that result in a forfeiture on appeal and by neglecting to argue other mitigating factors. We disagree.

""In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an

10

objective standard of reasonableness . . . under prevailing professional norms."

[Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.""' [Citation.] [¶] Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: "'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.'" [Citation.]' [Citation.] If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected,'" and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 875-876.)

To the extent defendant argues defense counsel committed prejudicial IAC by failing to argue purported mitigating factors to the court at the sentencing hearing, we hold defense counsel's performance was not deficient and defendant suffered no prejudice because the purported mitigating factors were not well supported in the record.

11

Defendant contends defense counsel should have argued that defendant's ostensible mental health issues, physical impairment, and drug issues were mitigating factors. However, none of these factors find substantive support in the record. Indeed, there is no explanation in the record as to why defense counsel failed to make the proposed arguments. Defense counsel never made any argument below regarding defendant's mental incompetency to stand for trial. Defendant himself told the probation officer he had no history of mental illness. Thus, defense counsel may not have raised the issue because there was no independent, verifiable support for any of the proposed arguments or because defendant forbade him from doing so.

Second, the fact that Jearolyn testified defendant was singing and talking to himself in his room prior to the incident is not necessarily or even at all convincing of a conclusion that he suffered from a mental incapacity. Indeed, many individuals sing or talk to themselves without suffering from any mental incapacity. The oldest son testified defendant said "some crazy things like that my dad has dead bodies in the house and that he killed somebody." Jearolyn also testified that upon returning from the victims' home, defendant said, "'I'm tired of this SOB molesting me.'" While these statements are more indicative of a potential mental problem, there is, again, no explanation for why defense counsel did not argue this factor to the court. Defendant's purported mental illness is the only proposed mitigating factor with any evidentiary support in the record.

In any event, regardless of whether defense counsel argued this factor to the court, the sentencing court was the same court that presided over the trial and noted prior to sentencing that it had paid careful attention to the trial proceedings. Thus, the court may

simply have determined that the testimony regarding indications of potential mental issues from which defendant may have suffered were not credible or sufficiently established. (*People v. Jackson* (2014) 58 Cal.4th 724, 749 [it is the exclusive province of the trial court to make credibility determinations].) Indeed, defendant himself denied having any mental health issues.

The remainder of defendant's proposed claims of IAC regarding failure to argue mitigating factors derive from unsworn statements made in the probation officer's report. Jearolyn reported defendant might have possessed controlled substances in the past and had mental health problems. Defendant's mother reported he had mental health issues and suffered from paranoid schizophrenia. She said defendant had been shot four months prior to sentencing and had four bullets lodged in his skull. Defendant's mother additionally reported defendant was a heavy drug user. Officers found methamphetamine and a pipe in defendant's bedroom. One officer reported defendant had delusions Ramon had molested him.

Again, there is no explanation in the record as to why defense counsel did not argue these factors in mitigation at the sentencing hearing. It is possible that none of the facts, other than the methamphetamine found in defendant's bedroom, could be otherwise confirmed. Indeed, again, defendant denied any mental health issues. He also denied any drug use during the past 25 years. The court read and signed the probation officer's report; thus, the court was cognizant of these issues regardless of whether defense counsel raised them in argument at sentencing. Thus, we cannot conclude that defense counsel acted deficiently or that defendant was prejudiced by defense counsel's decision

13

not to raise defendant's purported mental health, physical health, or drug use as mitigating factors. To the extent defendant contends defense counsel provided IAC by failing to object to the court's imposition of the aggravated term on count 1, consecutive terms on counts 2 and 3, and failure to stay the sentence on count 2 pursuant to section 654, we shall address the merits to forestall the IAC claim.

3.      Aggravated Term on Count 1

Defendant contends the court erred in imposing the upper term on count 1. We disagree.

"Within the limits set forth by the Legislature, a trial court has broad discretion . . . whether to select the upper, middle, or lower term of imprisonment (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(b))." (*People v. Clancey* (2013) 56 Cal.4th 562, 579.) "In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, . . . and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b).) The sentencing court's decision is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

"[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.

14

[Citations.]" (*People v. Sandoval, supra,* 41 Cal.4th at p. 847.) Defendants bear a heavy burden when attempting to show an abuse of discretion. (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) "'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.) "[A] trial court may 'minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.]" (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

Here, prior to imposing the upper term on count 1, the court noted that defendant had a lengthy criminal history and that there were children present in the home when defendant committed the offenses. Either or both of these factors supported imposition of the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730 ["a single factor in aggravation suffices to support an upper term"].) Moreover, contrary to defendant's contention, either or both of these factors did not violate provisions against dual use of factors affecting sentencing. That three children other than R.D., who was the victim of one of the offenses for which defendant was convicted, were present, were not elements of the substantive offenses or the enhancement. Likewise, that defendant had a number of felony criminal convictions and a parole violation above and beyond his prior strike conviction made the court's consideration of his criminal history proper. Thus, the court acted within its discretion in imposing the upper term on count 1.

4. Consecutive Terms on Counts 2 and 3

Defendant contends the court abused its discretion in imposing consecutive terms on counts 2 and 3. We disagree.

"'[A] trial court has discretion to determine whether several sentences are to run concurrently or consecutively. [Citations.] In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citations.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.]" (*People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059, disproved of on another ground in *People v. Superior Court* (2010) 48 Cal.4th 1.) "Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except" factors already used to impose an upper term, to enhance defendant's sentence, or which constitute an element of the crimes for which defendant was convicted. (Cal. Rules of Court, rule 4.425(b).) "Only one criterion is necessary to impose a consecutive sentence. [Citation.]" (*People v. King* (2010) 183 Cal.App.4th 1281, 1323.)

Here, again, the court noted prior to imposing sentence that defendant had a lengthy criminal history and that there were children present in the home when defendant committed the offenses. Either one or both of those factors would support the court's imposition of consecutive sentences on counts 2 and 3. To the extent the court relied on one of those factors in imposing the aggravated sentence on count 1, the remaining factor would suffice for imposition of consecutive sentences on the remaining counts. Thus, the court acted within its discretion in imposing consecutive terms on counts 2 and 3.

16

Moreover, assuming the court committed any error, we find the error harmless. (*People .v Sanchez* (1994) 23 Cal.App.4th 1680, 1686 ["Where, as in this case, it is improbable that a lower court's sentencing choice would have been different if it had been reminded to state a proper reason, the constitutional provision forbidding reversal for insubstantial errors should apply"].) Here, the court's impassioned statement regarding imposition of the sentence makes it improbable the court would have imposed a lesser sentence had it been informed of the need to identify which factor supported the aggravated sentence on count 1 and the consecutive sentences on counts 2 and 3. This is particularly true considering our holding below that the court erred in neglecting to stay the sentence on count 2.

B.    Section 654.

Defendant contends the court erred in neglecting to stay the sentence on count 2. We agree.

"Section 654 states in relevant part: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' [Citation.] '"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."' [Citation.]" (*People v. Capistrano* (2014) 59 Cal.4th 830, 885.)

17

"'[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability."'" [Citation.] 'It is [the] defendant's intent and objective, not temporal proximity of his offenses, which determine whether the transaction is indivisible.' [Citation.] '"The defendant's intent and objectives are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support [the] finding the defendant formed a separate intent and objective for each offense for which he was sentenced."'" [Citation.]" (*People v. Capistrano*, *supra*, 59 Cal.4th at p. 886.)

"When a defendant is convicted of burglary and the intended felony underlying the burglary, section 654 prohibits punishment for both crimes. [Citations.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 130.) "[S]ection 654 does not apply to crimes of violence against multiple victims. [Citation.] The reason is that '[a] defendant who commits an act of violence with intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' [Citation.]" (*People v. Correa* (2012) 54 Cal.4th 331, 341, fn. omitted.) "The failure of defendant to object on this basis in the trial court does not forfeit the issue on appeal. [Citation.]" (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

Here, the court's failure to stay sentence on count 2, the assault upon Ramon, violated the proscriptions of section 654 because it was the felony underlying the burglary. Section 654 was not addressed in either the probation officer's report or at the sentencing hearing. Nevertheless, the court expressly instructed the jury that one of the elements of the crime of burglary was that when defendant "entered the inhabited

18

dwelling house, he did so with the intent to commit an assault with a deadly weapon." "A burglary was committed if the defendant entered with the intent to commit an assault with a deadly weapon." (CALCRIM No. 1700.) The People expressly argued that defendant's felonious intent in entering Ramon's house was to assault Ramon. Thus, the court should have stayed sentence on count 2.

The People argue that where the information fails to identify the victim of the underlying felony supporting a burglary offense and there were multiple victims, the court is not required to stay sentence on the separate, underlying count: "[A] number of cases have upheld the application of the multiple victim exception based on evidence of multiple victims, without considering whether the identities of those victims had been pleaded." (*People v. Centers* (1999) 73 Cal.App.4th 84, 101 [Fourth Dist, Div. Two].) A burglary may be treated as a violent crime for purposes of the multiple victim exception to section 654 where the defendant inflicted great bodily injury in the commission of the burglary. (*Centers*, at p. 100.) Likewise, a burglary may be treated as a violent crime for purposes of the multiple victim exception to section 654 where defendant personally used a firearm in the commission of the burglary. (*Centers*, at p. 100.)

"Here, the trial court could properly find multiple victims even though the information did not specify, and the jury did not make any finding regarding, the identity of any victim of the burglary or the personal firearm use." (*People v. Centers*, *supra*, 73 Cal.App.4th at pp. 89, 101 [where defendant entered home for purposes of kidnapping the victim, two other individuals were present, defendant threatened one of the other individuals, and jury found true personal use of a firearm enhancement, court did not err

19

in imposing separate, unstayed sentences for kidnapping and burglary].) "[T]here was at least one victim of the burglary and the personal firearm use who was not also a victim of the kidnapping. This was sufficient. [Citation.]" (*Id*. at p. 102.)

However, here, unlike in *Centers*, no great bodily injury or personal use of a firearm in the commission of the burglary enhancements were alleged by the People or found true by the jury. Moreover, while unnamed in the information and the verdict, the People's argument that the felony underlying the burglary was defendant's assault upon Ramon makes it highly probable that that assault, and not any perceived offense against the unnamed children who were not the subject of any pled counts, enhancements, convictions, and findings, was the underlying felony found by the jury to support the burglary conviction. We decline to extend *Centers* to the facts of the instant case. We shall direct the superior court to stay sentence on count 2.

### C. Abstract of Judgment.

Defendant contends the abstract of judgment must be corrected to reflect the court's imposition of consecutive one-third the midterm sentences on counts 2 and 3 rather than consecutive full terms. The People agree. We also note the abstract of judgment incorrectly reflects defendant was found guilty by the court rather than a jury. We shall order the court to correct the abstract of judgment.

"It is well settled that '[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]' [Citation.] When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's

20

verbal pronouncement, [appellate courts have] the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties. [Citation.]" (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

Here, the court imposed one-third the midterm on both counts 2 and 3; however, the abstract of judgment erroneously reflects the court imposed consecutive full terms. Likewise, although a jury convicted defendant, the abstract of judgment reflects defendant was convicted by court trial. We shall direct the superior court clerk to correct the abstract of judgment.

## DISPOSITION

The trial court is ordered to modify the sentence on count 2 to reflect a stay pursuant to section 654. The trial court is further directed to correct the abstract of judgment to reflect defendant was convicted by a jury and that the sentencing court imposed consecutive terms of one-third the midterm on counts 2 and 3. The trial court is also directed to forward a copy of the new abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.

21