Filed 8/27/20  P. v. Lara CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B298582 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA089625) |
| v. | |
| ALVARO LARA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed but sentence modified.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Deputy Attorney General,

and David W. Williams, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Alvaro Lara (defendant) argues that his counsel at trial improperly conceded his guilt to two counts of robbery in violation of *McCoy v. Louisiana* (2018) 138 S.Ct. 1500 (*McCoy*). He also argues that the trial court erred in running most of his sentences consecutively and in not staying two of his sentences under Penal Code section 654.[1] We conclude that his *McCoy*-based challenge, his challenge to consecutive sentences, and his 654-based challenge to one of his felon-in-possession convictions lack merit; we conclude that his 654-based challenge to his misdemeanor possession-of-ammunition conviction is well taken. Accordingly, we affirm his convictions and order his sentence modified.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In June 2016, Rony Azurdia (Azurdia) and Jennifer Menjivar (Menjivar) sublet the spare bedroom in their rented home to defendant's estranged wife, Susana Hernandez (Hernandez). About a week after Hernandez moved in, she told defendant that Azurdia had tried to rape her. On hearing this news, defendant accompanied Hernandez to Azurdia's house to retrieve her belongings, but not before he grabbed a gun because he "didn't know how big [Azurdia] was," and wanted to be prepared if Azurdia "pulled out a gun" of his own.

Soon after defendant and Hernandez arrived at the house

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

to start packing up Hernandez's belongings, defendant and Azurdia got into a heated argument. At one point during the argument, defendant displayed his tattoos while claiming that he "kn[e]w people" and had "*gente* outside."

After defendant helped Hernandez carry her bagged-up belongings to the car, he heard Azurdia and another man laughing in the kitchen. The other man was Archie Cordova, who owned the house and who had come over that day to collect $2,933 from Azurdia and Menjivar (for rent and the outstanding balance of a security deposit). Defendant then entered the kitchen, pulled up his shirt so Azurdia and Cordova could see the gun tucked into his waistband, and yelled at both men, "Get on your knees right now." After the men did as defendant instructed, defendant pulled out his gun, aimed at Azurdia's head, and ordered both men to empty their pockets. Azurdia emptied his wallet and gave defendant all of his money, which included the $500 deposit Hernandez had paid the week before. Cordova, mindful of defendant's "tone of voice" and the "anger [defendant] had on his face," and thinking he was "going to die that day," handed defendant the rent money he had previously collected from Azurdia. Defendant and Hernandez departed together. The entire exchange was captured on a soundless video camera located in the kitchen.

Less than two weeks later, defendant was detained after a traffic stop and a loaded handgun was found in a secret compartment in the car.

At the time of these offenses, defendant had prior felony convictions and was on bail in another criminal case.

## II.  Procedural Background

For the events at the rented house, the People charged

3

defendant with (1) the robbery of Azurdia (§ 211), (2) the robbery of Cordova (§ 211), (3) being a felon in possession of a firearm (§ 29800, subd. (a)(1)). As to these events, the People alleged that defendant personally used a firearm (§ 12022.53, subd. (b)), and that the robberies were committed "for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subd. (b)(1)(C)). For the subsequent detention, the People charged defendant with being a felon in possession of a firearm and ammunition (§§ 29800, subd. (a)(1), 30305, subd. (a)(1)). As to all counts, the People alleged that defendant was on bail at the time of their occurrence (§ 12022.1).

The matter proceeded to trial. In both opening and closing arguments, defense counsel emphasized that the People had not proven the gang allegation because the robberies were "motivated" by defendant's "rage at the mistreatment of his [estranged] wife," *not* by a desire to benefit any gang.

The jury found defendant guilty of all of the charged crimes as well as found "true" the personal use and "on bail" enhancements, but found the gang enhancement "not true."[2]

The trial court sentenced defendant to prison for 18 years and 8 months. Specifically, the court imposed a sentence of 16 years for the robbery of Azurdia (comprised of a midterm base sentence of four years, plus 10 years for the personal use of a firearm enhancement, plus two years for the "on bail" enhancement), plus a consecutive sentence of 16 months for the robbery of Cordova (calculated as one-third of the midterm

---

[2] The People had also alleged that defendant had three prior prison terms (§ 667.5, subd. (b)), but those allegations were never submitted to the jury and did not become a component of defendant's sentence.

4

sentence of 48 months), plus two consecutive sentences of eight months for each felon-in-possession conviction (calculated as one-third of the midterm sentence of two years). The court also treated the possession of ammunition count as a misdemeanor, and imposed a concurrent one-year jail sentence.

Defendant filed this timely appeal.

## DISCUSSION

### I. Validity of Robbery Convictions Under *McCoy v. Louisiana*

In *McCoy*, *supra*, 138 S.Ct. 1500, the United States Supreme Court clarified that the Sixth Amendment not only "guarantees to each criminal defendant 'the Assistance of Counsel for his defence,'" but also defines the division of labor between a defendant and his counsel: The defendant gets to define "the objective of '*his* defence,'" while counsel gets to "make strategic choices regarding how best to achieve" that objective by making "trial management" decisions. (*McCoy*, at pp. 1508-1509; *People v. Frederickson* (2020) 8 Cal.5th 963, 993.) A defense lawyer oversteps his role—and thereby violates a defendant's Sixth Amendment right to counsel in a manner that is *per se* reversible—if (1) the defendant has "expressly" and "clear[ly]" "assert[ed]" to his counsel "that the objective of '*his* defence' is to maintain innocence of the charged criminal acts," and (2) his counsel nevertheless "override[s that objective] by conceding guilt." (*McCoy*, at pp. 1507, 1509; *People v. Eddy* (2019) 33 Cal.App.5th 472, 482-483 (*Eddy*); *People v. Franks* (2019) 35 Cal.App.5th 883, 891 (*Franks*); *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1166 (*Bernal*).)

Defendant argues that his counsel violated *McCoy* by conceding his guilt as to both robberies after defendant had made it clear that the objective of his defense was to maintain his

5

innocence of both robberies.  We review this argument de novo. (*People v. Mayfield* (1993) 5 Cal.4th 142, 199.)  Because the facts bearing on a possible *McCoy* violation differ for each robbery, we analyze them separately.

A.     *Robbery of Azurdia*

It is undisputed that defendant's trial counsel conceded in closing argument that defendant committed the charged robbery of Azurdia.  However, defendant's *McCoy* claim lacks merit because defendant never expressly or clearly asserted to his counsel that the objective of his defense was to maintain his innocence as to the robbery of Azurdia.  To the contrary, defendant took the stand at trial and testified that he satisfied every element of the crime of robbery as to Azurdia.  A defendant commits the crime of robbery if (1) he takes property not his own; (2) the property was in the possession of another person; (3) the property was taken from the other person in his immediate presence; (4) the property was taken against that person's will; (5) the defendant used force or fear to take the property; and (6) at the time he used force or fear, the defendant intended to deprive the owner of the property permanently.  (CALCRIM 1600; § 211; *People v. Anderson* (2011) 51 Cal.4th 989, 994; *People v. Huggins* (2006) 38 Cal.4th 175, 214.)  During his testimony, defendant testified to each of these elements vis-à-vis Azurdia: He admitted that he put a gun to Azurdia's head to "scare the shit out of him"; he asked Azurdia for the $500 while the gun was pointed at Azurdia's head; Azurdia, while in fear, then gave him the $500; and defendant had no intention of giving the money back to Azurdia.

On appeal, defendant proffers four reasons why, in his view, he had clearly communicated to his lawyer that his

6

objective was to maintain his innocence of the crime of robbing Azurdia.

First, defendant argues that he maintained during his testimony that he "didn't rob" Azurdia because (1) his decision to do so was spontaneous, as he had not planned on robbing Azurdia until Azurdia's laughing made him "angry," (2) he had good motives to commit the robbery, as he was only trying to get his estranged wife's $500 deposit back and Azurdia "deserved it," and (3) he was selective in what he took, as he took Azurdia's cash but not his wallet. We reject this argument for several reasons. To begin, defendant's assertion that he "*didn't* rob" Azurdia is tempered somewhat by his nearly simultaneous assertion that he "*did* rob him." More to the point, none of the reasons defendant cites for his view he did *not* rob Azurdia is an element of the crime of robbery: "[P]remeditation is not an element of the crime of robbery" (*People v. Pedel* (1927) 81 Cal.App. 558, 562); "motive . . . is not a necessary element of robbery" (*People v. Clark* (2011) 52 Cal.4th 856, 946 (*Clark*)), and the claim-of-right defense to robbery does not apply where, as here, a person tries to get back money *for a third party*, as defendant did in seeking to get the deposit money for his estranged wife (*People v. Anderson* (2015) 235 Cal.App.4th 93, 102); and taking some but not all of a victim's property at gunpoint is not a defense to robbery (*Clark*, at p. 946 ["the value of the property is irrelevant"]). A defendant's decision to testify to the facts satisfying all of the elements of a crime—while refusing to admit that those facts constitute a crime based on a mistaken view that admission to other facts (which are *not* elements) is also required—in no way "expressly" or "clearly" communicates to counsel that the objective of the defense at trial is to maintain one's innocence of

7

that crime.

Second, defendant contends that he clearly communicated his objective of maintaining his innocence during a pretrial *Marsden*[3] hearing.  He did not.  At that hearing, defendant complained that his counsel was not effectively representing him because, as pertinent here, counsel had only obtained "still[] [photos]" from the video rather than the video itself.  Defendant further explained that the video was important because "the video is going to show the truth"—namely, "it's going to show if I robbed them, as they're saying, or is it just me being angry and moving around and screaming."  Defendant anticipated that the video would "show[] me not taking nothing." Defendant's desire to get a video that he acknowledged at the time might prove him innocent or prove his guilt is not a clear expression that the objective of his defense is to maintain his innocence.  Defendant's unilateral hope that the video's contents might turn out to be favorable to him adds nothing.  Even if we construed defendant's complaint as constituting a clear directive to counsel to maintain his innocence, defendant countermanded that directive—or, at a minimum, countermanded any clarity in that directive—when he subsequently took the stand and admitted to every element of robbery as to Azurdia.

Third, defendant argues that he communicated his desire to maintain his innocence by rejecting plea offers from the People and the court in favor of going to trial.  If going to trial were enough to constitute a clear directive to counsel to maintain innocence as to all crimes, *McCoy* would apply in every case where there is a trial.  That is most certainly not the law.  (E.g.,

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

8

*People v. Palmer* (2020) 49 Cal.App.5th 268, 275-283; *Bernal, supra*, 42 Cal.App.5th 1165-1166; *People v. Burns* (2019) 38 Cal.App.5th 776, 784-785; *People v. Lopez* (2019) 31 Cal.App.5th 55, 63-66; *Franks, supra*, 35 Cal.App.5th at pp. 885, 891.) This is true, even when the defendant testifies at that trial. (*In re Smith* (2020) 49 Cal.App.5th 377, 386-390 (*Smith*) [no *McCoy* error where defendant goes to trial and testifies that he did not commit crime].)

Lastly, defendant points to *Eddy, supra*, 33 Cal.App.5th 472 and *People v. Flores* (2019) 34 Cal.App.5th 270 (*Flores*) as supporting his position. They do not, as the defendant in each of these cases made his objective to maintain his innocence abundantly clear to his attorney. In *Eddy*, the defendant told his attorney "not to go th[e] route" of admitting the defendant's guilt, and the attorney did "it anyway"; the attorney even acknowledged that he had overrode the defendant's wishes. (*Eddy*, at pp. 481-482, italics omitted.) In *Flores*, the defendant told the court at a pretrial *Marsden* hearing that the attorney was "'trying to make him admit to something that [he didn't] want to admit.'" (*Flores*, at p. 280.) For the reasons set forth above, the facts of this case are very different.

### B. *Robbery of Cordova*

It is undisputed that defendant, during his testimony, maintained his innocence of robbing Cordova by repeatedly insisting that he never took any money from him— notwithstanding a video that showed defendant taking something. Even if we assume that defendant's testimony was sufficient to clearly communicate to his lawyer that the objective of his defense was to maintain his innocence of this crime (but see *Smith, supra*, 49 Cal.App.5th at pp. 383-384, 389-390

9

[defendant's testimony denying involvement but no objection or request to seek substitution of counsel prior to closing argument, and counsel concedes crime during closing; no *McCoy* violation]), defendant's *McCoy* claim lacks merit because his counsel never conceded defendant's guilt as to the robbery of Cordova. During his opening statement, defense counsel admitted that defendant "had a gun" and "was at the house," but otherwise admitted neither robbery. During his closing argument, defendant noted that defendant's testimony "admitted almost every charge," but that "there [are] two that he refuses to [admit]" and "contest[s]." Counsel went on to summarize defendant's testimony: Defendant "claims that he did not receive the other several thousand dollars that allegedly was given to him [by Cordova] . . . but he admitted taking the $500 [from Azurdia]. I'll leave that to you. That's his position. He did not take the additional money from [Cordova], that's there." Counsel later argued, "I'm not saying [defendant is] . . . not guilty of the underlying crime, I'm saying he's not guilty of the [gang] enhancement," but further clarified that "I think [defendant] did an extraordinary job of telling you why he wasn't guilty of certain charges . . ." When defense counsel's arguments are considered in their totality, counsel did not concede defendant's guilt as to the Cordova robbery. Instead, he repeated—and thereby respected—defendant's assertion of innocence of that crime.

Defendant responds that counsel "effectively" conceded defendant's guilt of the Cordova robbery by referring to what defendant "claim[ed]" in his testimony and by labeling defendant's claim of innocence as merely "his [that is, defendant's] position." To be sure, counsel did not offer a full-throated endorsement of defendant's claim of innocence as to the

10

Cordova robbery, as doing so in the face of a videotape showing defendant taking something from Cordova would have likely destroyed counsel's credibility with the jury, a credibility that was critical to counsel's ultimately successful argument to reject the gang enhancement. (Accord, *People v. Mitcham* (1992) 1 Cal.4th 1027, 1060-1061 [counsel's decision to be "more realistic" in order to maintain credibility with the jury can be a "good trial tactic[]"].) But *McCoy* is violated only if counsel concedes guilt in the face of a defendant's asserted objective of maintaining his innocence. Counsel's endorsement of defendant's testimony, even if viewed as tepid, is not a concession of guilt and thus did not violate *McCoy*.

## II. Sentencing Issues

### A. *Consecutive sentences*

Unless otherwise specified by statute, a trial court has "broad discretion" whether to run the sentences for separate counts concurrently or consecutively. (*People v. Clancey* (2013) 56 Cal.4th 562, 579 (*Clancey*); § 669, subd. (a); Cal. Rules of Court, rule 4.425.) A court may run all sentences consecutively if it finds a single aggravating factor. (*People v. Osband* (1996) 13 Cal.4th 622, 728-729.) Defendant argues that the trial court erred in running his robbery and felon-in-possession sentences consecutively. We review this claim for an abuse of discretion. (*Clancey*, at pp. 579-581.)

Even if we ignore that this argument was forfeited by counsel's failure to object (*People v. Scott* (1994) 9 Cal.4th 331, 356), the trial court did not abuse its discretion in running defendant's sentences consecutively. The court set forth several aggravating factors in this case, including that (1) the crime involved "separate victims," (2) the crime involved a "high degree

11

of cruelty," (3) the victims were unarmed, (4) defendant had an extensive criminal history, and (5) defendant testified falsely when he denied taking money from Cordova. Each of these are valid aggravating factors (Cal. Rules of Court, rules 4.425, 4.421), and any one of them was sufficient to justify consecutive sentences.

Defendant responds that the trial court could not rely on any of these factors because (1) the court had already relied on those factors to impose midterm sentences for the robbery and to impose the firearm enhancement, and (2) the "dual use" doctrine prevented the re-use of those factors to justify consecutive sentences. This responsive argument lacks merit. Because no aggravating factor is necessary to justify a midterm sentence (Cal. Rules of Court, rule 4.425(b)(1) [aggravating factor necessary only to impose upper-term sentence]; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1104 [same]), to justify the mandatorily consecutive firearm enhancement imposed in this case (see *People v. Coleman* (1989) 48 Cal.3d 112, 164), or to justify a refusal to strike an enhancement, the trial court did not make use of any of the aggravating factors in imposing any other portion of the sentence; this left all of them available for use in imposing consecutive sentences. And even if we assume that an aggravating factor is necessary to justify the denial of a motion to strike the firearm enhancement, that would still leave four other factors available to justify consecutive sentences. A trial court's failure to specify which aggravating factor justifies which sentencing choice is either not error or, at a minimum, not prejudicial error. (*People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1684.)

**B.    *Section 654***

Section 654 prohibits a court from "punish[ing]" "[a]n act or omission"—or a ""course of criminal conduct""—"under more than one provision." (§ 654, subd. (a); *People v. Capistrano* (2014) 59 Cal.4th 830, 885 (*Capistrano*), overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 103-104.)  Generally, ""[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."" (*Capistrano*, at p. 885, quoting *People v. Rodriguez* (2009) 47 Cal.4th 501, 507; *People v. Beamon* (1973) 8 Cal.3d 625, 639-640.)  We review a trial court's "implicit finding[s] that section 654 does not apply" for substantial evidence.  (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1005.)

1.    *Felon-in-possession count*

Defendant argues that the trial court erred in not staying the felon-in-possession count occurring on the same day as the robberies.  This argument lacks merit.  Where, as here, a defendant "arrive[s] at the scene of . . . [his] primary crime already in possession of [a] firearm," that possession is "distinctly antecedent and separate from the [ensuing] . . . crimes" and section 654 does not bar multiple punishment.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143-1145; cf. *People v. Kane* (1985) 165 Cal.App.3d 480, 488 [section 654 applies where defendant's possession of firearm, and its use in an assault, and its discharge are part of an "indivisible course of conduct"]; *People v. Atencio* (2012) 208 Cal.App.4th 1239, 1241-1244 [section 654 applies where defendant's theft and possession of same firearm are one

in the same].)  Substantial evidence supports the trial court's implicit finding that defendant took possession of the firearm at home as a means of protection and that his subsequent decision to rob Azurdia and Cordova was made long after, when he heard them laughing.  Thus, his possession of the firearm was "distinctly antecedent and separate from" the robberies.

      2.     *Possession of ammunition*

As the People concede, the trial court erred when it did not stay defendant's sentence for possession of ammunition because where, as here, the ammunition is loaded in the gun at the time of possession, the crimes of possessing the firearm and possessing the ammunition are indivisible.  This result is dictated by *People v. Lopez* (2004) 119 Cal.App.4th 132, 138-139.

# DISPOSITION

Defendant's sentence for possession of ammunition by a person prohibited from owning and possessing a firearm under section 30305, subdivision (a) (count 8), is modified to reflect the sentence is stayed pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

15